UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

WILLIAN ANTONIO BELANDRE GONZALEZ,

Petitioner,

v.

TODD BLANCHE, et al.,

Respondents.

Case No. 2:26-cv-00674-ART-EJY

ORDER GRANTING HABEAS PETITION
(ECF No. 8)

Petitioner Willian Antonio Belandre Gonzalez brings this action against Respondents in habeas, seeking release or a hearing on the basis that his summary re-detention after release on parole violates due process. Mr. Gonzalez's habeas petition is currently pending before the Court. (ECF No. 8.) On May 14, 2026, the Court held oral argument on this matter. The Court now grants the Petition and orders Mr. Gonzalez released from detention.

## I.    Factual Background

Mr. Gonzalez applied for admission into the United States at the Paso Del Norte port of entry in El Paso, Texas on or about July 4, 2024, without the documents required to legally enter the United States. (ECF No. 10-2.) That same day, Mr. Gonzalez was issued a Notice to Appear ("NTA") and placed in removal proceedings, and then subsequently paroled into the United States via the CBP One application, pending a hearing in removal proceedings. (*Id.*)

On February 14, 2026, Mr. Gonzalez was arrested by local police in Montana for domestic violence. (ECF No. 10-1.) That same day, Mr. Gonzalez was re-detained by Immigration and Customs Enforcement (ICE) and he has remained

1

in detention since. (ECF No. 8; 10-1.) There is no argument that Mr. Gonzalez's parole expired before he was detained.

## II.   Jurisdiction

The Court has jurisdiction over Mr. Gonzalez's case under 28 U.S.C. § 2441, regardless of the jurisdiction-stripping provisions of 8 U.S.C. §§ 1252(g) and 1252(b)(9). Neither of those rules deprive district courts of jurisdiction to hear challenges to confinement, as distinct from challenges to removal and actions taken in furtherance of a removal proceeding.

First, the Supreme Court has limited the reach of § 1252(g). That section deprives courts of jurisdiction to review "any cause or claim by or on behalf of an alien arising from the decision or action by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter." The Supreme Court has named these factors the "three discrete events along the road to deportation." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Petitioner challenges the lawfulness of his detention only, and detention is not one of the three events. A request for a bond hearing is "independent of, and collateral to, the removal process." *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025).

Second, the Supreme Court has rejected the argument that Section 1252(b)(9) is a jurisdictional bar to district court review of immigration detention. That section provides that "judicial review of all questions of law . . . including interpretation and application of statutory provisions . . . arising from any action taken . . . to remove an alien from the United States" is only proper before the appropriate federal court of appeals in the form of a petition for review of a final removal order. *Id.* The Supreme Court has squarely held that Section 1252(b)(9) does not deprive federal courts of jurisdiction to decide whether certain statutory provisions require detention without a bond hearing. *Jennings v. Rodriguez*, 583

U.S. 281, 292 (2018). Once again, "claims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process." *Gonzalez v. U.S. Immig. and Cust. Enf't*, 975 F.3d 788, 810 (9th Cir. 2020); *see Nielsen v. Preap*, 586 U.S. 392, 402 (2019).

## III.     Legal Standards

### A. Habeas Corpus Under 28 U.S.C. § 2441

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### B. Due Process

Noncitizens present in the United States are entitled to due process protections. *See, e.g., Trump v. J.G.G.*, 604 U.S. 670 (internal citations and quotations omitted) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."); *Zadvydas*, 533 U.S. at 693 (applying due process in the context of detention). The rights of noncitizens include rights to "notice and opportunity to be heard 'appropriate to

the nature of the case.'" *J.G.G.*, 604 U.S. at 673 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)); *see also Mathews v. Eldrige*, 424 U.S. 319, 332 (1976).

To determine whether detention violates procedural due process, courts in the Ninth Circuit typically apply the *Mathews* test. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (observing that the Ninth Circuit and other circuits continue to apply the *Mathews* test notwithstanding the Government's heightened interest in detaining immigrants.) Under that three-part test, the court weighs (1) the private interest at stake, (2) the risk of an erroneous deprivation of that private interest and the value of additional safeguards, and (3) the Government's countervailing interests.  *Id.*

Several courts in the Ninth Circuit have also concluded that when a noncitizen is paroled under 8 U.S.C. § 1182, the government cannot summarily revoke that parole without offending due process. *See Velasquez-Chinga v. Noem*, No. 3:26-cv-00105-RBM-KSC, 2026 WL 311507, at *3 (S.D. Cal. Feb. 5, 2026) (collecting cases). Instead, "due process for parole terminations requires (1) a decision by an appropriate official on whether the purpose of parole has been served; (2) written notice of the reasons for termination; and (3) an opportunity to rebut the reasons given for termination." *Oreilly v. Blanche*, No. 2:26-CV-00278-GMN-EJY, 2026 WL 1031192, at *3 (D. Nev. Apr. 16, 2026) (internal quotations and citations omitted).

**IV.      Discussion**

**A. Class Membership**

As a preliminary matter, Mr. Gonzalez asserts that he is a member of the *Jacobo Ramirez* class. (*See* ECF Nos. 11; 12.) The *Jacobo Ramirez* class is defined as "[a]ll noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before

an Immigration Court within the District of Nevada; (3) *whom DHS alleges or will allege to have entered the United States without inspection or parole*; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States." *Jacobo Ramirez v. Mullin*, No. 2:25-CV-02136-RFB-MDC, 2026 WL 879799, at \*33 (D. Nev. Mar. 30, 2026) (emphasis added). The Court finds that Mr. Gonzalez meets all but the third parameter for *Jacobo-Ramirez* class membership.

While Mr. Gonzalez is (1) actively being detained by ICE, (2) is currently in removal proceedings, and (3) is not subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231, the Court finds DHS does not allege that Petitioner entered the United States without inspection or parole. (*See* ECF Nos. 10-1; 10-2.) To the contrary, Mr. Gonzalez's Notice to Appear, which sets forth the basis for his ongoing removal proceedings, charges him as inadmissible because he was not in possession of a valid entry document when he applied for admission and was inspected and paroled at the El Paso, Texas Port of Entry, on July 4, 2024. Additionally, at oral argument, Respondents stated their belief that Mr. Gonzalez was validly paroled into the United States. As a result, the Court finds that Mr. Gonzalez is not a *Jacobo Ramirez* class member, because he was lawfully inspected by immigration officers and paroled when he entered the country on July 4, 2024.

**B. Due Process**

The Court concludes that Respondents violated Mr. Gonzalez's procedural due process rights. As a person who had been previously released from detention on parole, Mr. Gonzalez was owed prior notice, individualized assessment, and an opportunity to be heard before re-detention. To reach this conclusion, it is not

necessary to decide whether Mr. Gonzalez was subject to mandatory detention. The subject of this analysis is not Respondents' authority to detain, but the adequacy of the process by which they detained Mr. Gonzalez. *See Caisa Telenchana v. Hermosillo*, No. 2:26-CV-00363-GJL, 2026 WL 696806, at *10; *Rodriguez Cabrera v. Mattos*, 808 F. Supp. 3d 1159, 1178 (D. Nev. 2025).

### 1. The Private Interest

Having earlier been granted parole, Mr. Gonzalez has a liberty interest in his release. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Hamdi*, 542 U.S. at 529; *see also Zadvydas*, 533 U.S. at 696. Even when an individual is subject to conditions of parole or release, they have "relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," and their liberty interest "is valuable and must be seen as within the protection of the [Due Process clause]" such that termination of parole "calls for some orderly process." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). District courts in this circuit have applied this principle to parole from immigration detention. *See, e.g., Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 800 F.Supp.3d 1130 (W.D. Wash. Sept. 12, 2025) (collecting cases).

Following his initial release from detention, Mr. Gonzalez acquired a significant liberty interest entitled to the protection of the Due Process Clause. In reasonable reliance on this liberty interest, Mr. Gonzalez obtained a work permit, secured employment at Costco, and build connections in his community. (ECF No. 8, 10-1.) He further states, and Respondents do not dispute, that he applied for relief, like asylum, outside of removal proceedings in reliance on his continued liberty. *Telenchana*, 2026 WL 696806, at *11; *Musaev v. Hermosillo*, No. 2:26-CV-

00522-RAJ, 2026 WL 925611, at *5 (W.D. Wash. Apr. 6, 2026). Accordingly, the first *Mathews* factor weighs heavily in his favor.

### 2. Risk of Erroneous Deprivation

Because Respondents failed to comply with the regulatory requirements for revoking humanitarian parole, the risk of the erroneous deprivation of Mr. Gonzalez's liberty is high. *Flores Torres v. Hermosillo*, No. 2:25-CV-02687-LK, 2026 WL 145715, at *7 (W.D. Wash. Jan. 20, 2026). This is particularly true where the government need only show that the "purpose of [Petitioner's] parole has been served" to revoke that parole. 8 U.S.C. § 1182(d)(5)(A). This standard affords the government considerable discretion to re-detain Mr. Gonzalez, which compounds the risk of erroneous deprivation. See *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1161 (D. Nev. 2025) (finding in the bond hearing context that "unreviewable" government direction to detain creates a high risk of erroneous deprivation). It therefore follows that the value of additional procedural safeguards, such as notice and an opportunity to be heard, is also high.

Humanitarian parole may be terminated in two ways. First, parole terminates automatically and without notice if the noncitizen departs from the United States or "at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1). The Government admits that they have no evidence that Mr. Gonzalez's parole status automatically terminated before his encounter with ICE on February 14, 2026. Second, if parole is not terminated automatically, either "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return

7

or be returned to the custody from which he was paroled[.]"). Except in cases of automatic termination, the noncitizen must be provided written notice. 8 C.F.R. § 212.5(e)(2)(i).

Whether automatic or with notice, once a noncitizen's parole has been terminated, implementing regulations require that "any order of exclusion, deportation, or removal previously entered shall be executed." 8 C.F.R. § 212.5(e)(2)(i) (emphasis added); *see also* 8 C.F.R. § 212.5(e)(1). "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the [noncitizen] shall again be released on parole unless in the opinion of [a DHS official with authority] the public interest requires that the [noncitizen] be continued in custody." 8 C.F.R. § 212.5(e)(2)(i) (emphasis added).

Respondents generally argue that Mr. Gonzalez's parole was terminated through a proper process when he was re-detained by immigration authorities in February 2026. While Respondents point to the Notice to Appear of July 4, 2024, as a possible "charging document" that may serve as notice of parole revocation, they otherwise concede that Mr. Gonzalez was not provided any written notice terminating his parole. However, the Notice to Appear was issued when Mr. Gonzalez was initially paroled and so could not have terminated it. (*See* ECF No. 10-2.)

Additionally, as stated above, due process for parole terminations requires "(1) a decision by an appropriate official on whether the purpose of parole has been served; (2) written notice of the reasons for termination; and (3) an opportunity to rebut the reasons given for termination." *Oreilly*, No. 2:26-CV-2026 WL 1031192, at *3. Respondents failed to present evidence that an appropriate official made any decision regarding whether the purpose of parole has been served. Even assuming that Mr. Gonzalez was given reasons for termination of his parole, he has not been afforded any opportunity to rebut such

reasons either before or since his detention, as he has not been given a bond hearing.

Altogether, there is nothing to show that Mr. Gonzalez was provided with any process prior to re-detention. The lack of any procedural safeguards whatsoever creates a risk of factual and legal mistakes. *Rodriguez Cabrera*, 808 F. Supp. 3d at 1181; *Gaitan Coreas*, 2026 WL 1121974, at *7. DHS initially found upon granting parole that Mr. Gonzalez was not a danger or a flight risk, and no evidence has been submitted to show that DHS decided that circumstances changed. Respondents' failure to follow their own regulations created an undue risk of erroneous deprivation. Due process requires, at minimum, that the government justify the basis for re-detention, and that the noncitizen be given the opportunity to be heard with respect to re-detention at a meaningful time and in a meaningful manner. *Telenchana* at *12, *Dieng*, 2026 WL 411857, at *8; *see also Gaitan Coreas*, 2026 WL 1121974, at *7; *O.F.B. v. Maldonado*, No. 25-CV-6336 (HG), 2025 WL 3277677, at *6 (E.D.N.Y. Nov. 25, 2025). Accordingly, the second *Mathews* factor favors Mr. Gonzalez.

### 3. The Government's Interest

The Government has a strong interest in the efficient administration of immigration laws, including those regarding detention of noncitizens. *Rodriguez Diaz*, 53 F.4th at 1208. However, the Government's interests will still be adequately protected if immigrants are afforded some minimal procedural guarantees. *Rodriguez Cabrera*, 808 F. Supp. 3d at 1182; *see Gaitan Coreas*, 2026 WL 1121974, at *7 ("[T]he government's interest in detaining Petitioner without a hearing is low"). Respondents have not argued that it is costly for them to provide notice of re-detention and an opportunity to be heard. *See Gaitan Coreas*, 2026 WL 1121974, at *7 ("[C]ustody hearings are routine and impose a 'minimal' cost.") Finally, the Government does not have an interest in pursuing

the detention of noncitizens in a manner that violates its own regulations. *O.F.B.,* 2025 WL 3277677, at *7. Accordingly, the third *Mathews* factor also favors Mr. Gonzalez.

### C. Remedy

In similar cases, district courts in the Ninth Circuit have generally granted release on the conditions of the petitioner's most recent parole. *See, e.g. Arias v. Larose,* No. 3:25-CV-02595-BTM-MMP, 2025 WL 3295385, at *5 (S.D. Cal. Nov. 25, 2025); *Gaitan Coreas,* 2026 WL 1121974, at *8. In the ordinary case, "the Constitution requires some kind of hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch,* 494 U.S. 113, 127 (1990) (emphasis in original). Thus, "because the constitutional violation is the absence of *pre-deprivation* process, the proper remedy is to restore the status quo ante—that is, to return [Petitioner] to the conditions that existed before his unlawful detention." *Kirykovich v. Hernandez,* No. 2:26-cv-00695-JNW, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) (emphasis in original).

**V.      Conclusion**

IT IS THEREFORE ORDERED that Mr. Gonzalez's Petition for Writ of Habeas Corpus, (ECF No. 8), is GRANTED.

IT IS FURTHER ORDERED that Mr. Gonzalez must be RELEASED from detention by 4:00 p.m. on May 15, 2026, subject to the conditions of his prior parole.

IT IS FURTHER ORDERED that, prior to any re-detention, Mr. Gonzalez is entitled to (1) notice of the reasons for revocation of his parole and (2) an opportunity to rebut those reasons in a hearing before an impartial adjudicator.

IT IS FURTHER ORDERED that the parties must file a Joint Status Report no later than May 21, 2026, to certify compliance with the Court's order.

IT IS FURTHER ORDERED that the Motion for Leave to Appear Telephonically (ECF No. 16) is denied as moot.

DATED THIS 14th Day of May 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

11